UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RAMON REFF,  CIVIL NO.  07-2515 (PAM/JSM)

    Plaintiff,

v.  REPORT AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

The above matter is before the undersigned United States Magistrate Judge on plaintiff's Motion for Summary Judgment [Docket No. 11] and defendant's Motion for Summary Judgment [Docket No. 18].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, it is recommended that plaintiff's Motion for Summary Judgment be **GRANTED** and that defendant's Motion for Summary Judgment be **DENIED**.

I.    PROCEDURAL BACKGROUND

Ramon A. Reff's ("Reff") application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416, 423 1382c, was initially filed on July 19, 2004.  Tr. 41.  Reff had been diagnosed on July 13, 2004, with psychotic disorder and anxiety disorder, with possible schizophrenia and bi-polar disorder.  Tr. 51.

The Social Security Administration ("SSA") denied Reff's application initially and upon reconsideration on the grounds that an outstanding arrest warrant issued against him rendered Reff ineligible for benefits:

> College Park Police Department in College Park, GA reported there is an outstanding warrant. According to Section 1611 of the Social Security Act an individual is ineligible for SSI for any month during which they are fleeing to avoid prosecution for a crime that is a felony or fleeing to avoid custody or confinement after conviction for a crime which is a felony or violating a condition of probation or parole. Since you have not taken care of this warrant you are not eligible for SSI.

Tr. 22-24.

Reff filed a request for a hearing by an Administrative Law Judge. Tr. 25-26. Administrative Law Judge Michael D. Quayle ("ALJ") initially found in favor of Reff on August 15, 2005, concluding that he was eligible for benefits on the grounds that there was no outstanding warrant for his arrest and ordering that his case be returned to the SSA for a medical determination on his application for SSI benefits. Tr. 41-43.

The ALJ then reopened the August 15, 2005 decision on the basis of new evidence submitted by Reff's attorney that his client did have an outstanding arrest warrant. Tr. 10, 44. Reff received a hearing before the ALJ on February 28, 2006 and was represented by legal counsel. Tr. 10. Testimony was taken at the hearing from Reff and from Reff's social worker, Jim Gaylord. Tr. 10, 107. On August 11, 2004, the ALJ issued a decision denying Reff benefits. Tr. 7-8, 13. Reff filed a Request for Review of the ALJ's decision with the Appeals Council. Tr. 92. The Appeals Council denied Reff's request for review and upheld the ALJ's decision denying benefits to Reff (Tr. 3-5), making the ALJ's findings the final decision of defendant. See 42 U.S.C. § 405(g).

Reff sought review of the ALJ's decision by filing the instant action with this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The matter is now before the Court on plaintiff's Motion for Summary Judgment [Docket No. 11] and defendant's Motion for Summary Judgment [Docket No. 18].

## II.    FACTUAL BACKGROUND

In 2001, Reff, who was 17 years old at that time, resided with his grandmother in College Park, Georgia. Tr. 113. While in College Park, Reff had an encounter with police regarding an incident that occurred on September 16, 2001. Tr. 113. Reff testified that on this date he was with his friend and brother in an automobile when a man started shooting at them. Tr. 114. Reff stated that they drove off to get away from the shooter. Id. The vehicle was then pulled over by police. Id. The police questioned the occupants of the vehicle, including Reff, and asked them to go back to the scene of the shooting. Tr. 115. Reff gave police his name and address and after questioning him, police dropped him off at his home. Id. Reff testified that the police did not charge him with any crime nor did the police tell him that he had to appear in court or at the police station. Tr. 115. The police incident report states that police received a dispatch regarding damage to church property. Tr. 46. The church's pastor stated he observed a bullet hole in his church and was told by a female that a male known as "Jeff" had a gun the previous night and had shot the back wheel of a vehicle and shot at a 14 year old male known as "Mike." Tr. 45-46. On September 16, 2001, a judge in the City Court of College Park issued an arrest warrant for Reff on an aggravated assault charge, based on discharging a firearm from a motor vehicle towards another person. Tr. 47. The arrest warrant was never executed. Tr. 48.

Reff stated that he stayed with his grandmother for another month after the September police incident, and then he moved to Chattanooga, Tennessee in mid-November to enroll in Job Corps. Tr. 116. Reff's mother and two sisters resided in Chattanooga. Id. Reff enrolled in Job Corps on December 4, 2001, because he was having trouble with school and wanted to get his GED. Tr. 116, 117. He attended the Chattanooga Job Corps for approximately eight months. Id. Reff completed Job Corps and received his GED in Morganfield, Kentucky. Tr. 117-18.

After completing Job Corps, Reff went back to Chattanooga for three to four months. Tr. 118. He then traveled to Duluth, Minnesota to attend Lake Superior College. Id. Reff's father resided in Duluth. Id. He attended Lake Superior College for two semesters. Id.

Reff testified that up to this point in time, he no idea that there were any charges pending against him anywhere. Id.

In May or June of 2004, Reff was questioned by Duluth police for suspicion of underage smoking. Tr. 119. When the police officer ran Reff's name, he found the outstanding warrant for his arrest from Georgia. Id. Reff was then placed into the police squad car while the College Park Police Department was contacted. Reff was released by the police officer after the College Park Police Department stated that they did not want to extradite him. Id.

In an effort to resolve the warrant, Reff's attorney contacted the Fulton County Attorney's office, but was told they did not have the case. Tr. 34. On April 27, 2005, counsel then wrote to Officer Tedford at the College Park Police Department, and after explaining Reff's lack of notice about the warrant, his inability to pay for travel to Georgia to address the warrant, and the impact of any travel on his mental health,

asked whether the officer would consider dismissal of the warrant for his arrest.  Tr. 34-35.

Consistent with counsel's letter, at the hearing Reff testified that he did not have the financial ability to travel to Georgia to resolve the outstanding warrant.  Tr. 124.  Reff's household income consisted of $532 in cash benefits ($400 from his wife's tribe and $132 from Minnesota Family Investment Program) and $350 in Food Stamps.  Tr. 122.  Reff's total expenses per month were estimated at $920.  Tr. 123-24.  Reff's family (consisting of himself, his wife and 11 month old child) had two automobiles.  Tr. 123.

Reff's social worker, Gaylord, testified that although Reff's symptoms of mental illness had decreased, he was still working on dealing with hostile thoughts, racing thoughts, jumbled thinking and auditory hallucinations.  Tr. 126-27.  According to Gaylord, a trip to Georgia would not help his recovery and "probably make things a whole lot worse for him."  Tr. 127.

## III.   PROCESS FOR REVIEW

The review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Johnson v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000); Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  "We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."  Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)); see also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994).

5

"'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see also Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (same).

In addition, a court must determine if an ALJ's decision is free of legal error. See Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) (citation omitted). In doing so, courts are to give "substantial deference to the agency's interpretations of the statutes and regulations that it administers." Ixtlilco-Morales v. Keisler, 507 F.3d 651, 653 (8th Cir. 2007) (citation omitted); see also Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (citing Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004)) ("We review the ALJ's interpretation of Social Security regulations de novo, and we give substantial deference to the Commissioner's interpretation of the Social Security Act."). On the other hand, "no deference is due if the interpretation is contrary to the regulation's plain meaning." In re Old Fashioned Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001); see also Saint Marys Hosp. of Rochester, Minnesota v. Leavitt, -- F.3d ----, 2008 WL 2875829 at *3 (8th Cir. July 28, 2008) (quoting Horras v. Leavitt, 495 F.3d 894, 900 (8th Cir. 2007)) ("'If there is ambiguity in a statute that an agency has been entrusted to administer, however, the agency's interpretation is controlling when embodied in a regulation, unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" ).

6

## IV.  DECISION UNDER REVIEW

The ALJ concluded that Reff's SSI benefits were properly suspended under § 1611(e)(4)(A)[1] of the Social Security Act.  Tr. 13.  The ALJ based this decision on the following findings:

1. On October 10, 2001, warrant number W672937192 was issued for Ramon A. Reff by the College Park, Georgia Police Department.

2. The warrant issued on October 10, 2001, for Ramon Reff, was for the offense of aggravated assault.

3. Warrant number W672937192 is outstanding for Mr. Reff.

4. The claimant does not fall within the statutory criteria for consideration of whether good cause exits, based on mitigating circumstances, to be found to be an eligible individual.  (Section 1611(e)(4)(C) of the Social Security Act).

5. The claimant's supplemental security income benefits were properly suspended, pursuant to the provisions of Section 1611(e)(4)(A) of the Social Security Act.

Tr. 13.

## V.  ISSUES UNDER REVIEW

Reff argued that the ALJ erred in finding him ineligible for benefits as a "fleeing felon" because the act of fleeing requires knowledge and intent.  See Plaintiff's Brief ("Pl. Br.") at p. 7.  Reff maintained that the Commissioner must prove that he intentionally and knowingly fled from prosecution.  Id.  According to Reff, he did not intentionally and knowingly flee because he was never served with an arrest warrant or contacted again by the College Park Police after his initial contact with law enforcement in September of 2001.  Id.  While he learned of the outstanding warrant for his arrest in

---

[1]  As amended, 42 U.S.C. § 1382(e)(4)(A).

7

2004, Reff asserted that this does not make him a "fleeing felon" because Georgia was not willing to extradite him, and because he did not have the ability to return on his own due to his financial situation and the affect of traveling on his mental health. Id. at pp. 8-10. Further, Reff argued that his eligibility for SSI benefits should not be affected by the Georgia warrant because the warrant makes no finding that he was fleeing to avoid prosecution, as is required by the SSA's own regulation to suspend benefits. Id. at pp. 10-11.

In response, the Commissioner argued that Reff's knowledge of the outstanding arrest warrant and his failure to act on it prior to applying for benefits is sufficient to establish his intent to flee and avoid prosecution. See Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem.") at pp. 6, 12. In addition, defendant submitted that based on its reasonable interpretation of the governing statutes and regulations, that the SSA does not have to conduct its own inquiry into Reff's intent to flee through its administrative adjudication system, but may instead infer intent from the existence of a valid felony arrest warrant issued by a court. Id. at p. 6.

## VI. DISCUSSION

The statute from which Reff was denied SSI benefits, was enacted as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), as supplemented by the Social Security Protection Act of 2004 ("SSPA"). It provides in relevant part:

> (4) (A) No person shall be considered an eligible individual . . . with respect to any month if during such month the person is-
>
> (i) <u>fleeing to avoid prosecution</u>, or custody or confinement after conviction, under the laws of the place from which the person flees, for a crime, or an attempt to commit a crime, which is a felony . . . or

> (ii) violating a condition of probation or parole imposed under Federal or State law.
>
> (B) Notwithstanding subparagraph (A), the Commissioner shall, for good cause shown, treat the person referred to in subparagraph (A) as an eligible individual or eligible spouse if the Commissioner determines that—
>
> (i) a court of competent jurisdiction has found the person not guilty of the criminal offense, dismissed the charges relating to the criminal offense, vacated the warrant for arrest of the person for the criminal offense, or issued any similar exonerating order (or taken similar exonerating action),
>
> or
>
> (ii) the person was erroneously implicated in connection with the criminal offense by reason of identity fraud.
>
> (C) Notwithstanding subparagraph (A), the Commissioner may, for good cause shown based on mitigating circumstances, treat the person referred to in subparagraph (A) as an eligible individual or eligible spouse if the Commissioner determines that—
>
> (i) the offense described in subparagraph (A)(i) or underlying the imposition of the probation or parole described in subparagraph (A)(ii) was nonviolent and not drug-related, and
>
> (ii) in the case of a person who is not considered an eligible individual or eligible spouse pursuant to subparagraph (A)(ii), the action that resulted in the violation of a condition of probation or parole was nonviolent and not drug-related.

42 U.S.C. § 1382(e)(4)(A), (B), (C) (emphasis added).

The SSA's implementing regulation tracks the language of § 1382(e)(4)(A):

> (a) Basis for suspension. An individual is ineligible for SSI benefits for any month during which he or she is—
>
> (1) <u>Fleeing to avoid prosecution</u> for a crime, or an attempt to commit a crime, which is a felony under the laws of the place from which the individual flees . . . ; or

9

> (2) Fleeing to avoid custody or confinement after conviction for a crime, or an attempt to commit a crime, which is a felony under the laws of the place from which the individual flees. . . .; or
>
> (3) Violating a condition of probation or parole imposed under Federal or State law.

20 C.F.R. § 416.1339(a) (emphasis added).

Neither § 1382(e)(4)(A) nor the regulation defines the phrase "<u>Fleeing to avoid prosecution</u>." However, the relevant portion of 20 C.F.R. § 416.1339 provides that the suspension of a claimant's benefits is effective of the first day of the earlier of:

> (i) <u>The month in which a warrant</u> or order <u>for the individual's arrest</u> or apprehension, an order requiring the individual's appearance before a court or other appropriate tribunal (e.g., a parole board), or similar order <u>is issued by a court</u> or other duly authorized tribunal <u>on the basis of an appropriate finding that the individual</u>--
>
> (A) <u>Is fleeing, or has fled, to avoid prosecution as described in paragraph (a)(1) of this section</u>;
>
> (B) Is fleeing, or has fled, to avoid custody or confinement after conviction as described in paragraph (a)(2) of this section;
>
> (C) Is violating, or has violated, a condition of his or her probation or parole as described in paragraph (a)(3) of this section; or
>
> (ii) The first month during which the individual fled to avoid such prosecution, fled to avoid such custody or confinement after conviction, or violated a condition of his or her probation or parole, if indicated in such warrant or order, or in a decision by a court or other appropriate tribunal.

20 C.F.R. § 416.1339(b)(1)(i)-(ii) (emphasis added).

To implement that portion of the SSPA bearing on benefits to persons fleeing prosecution, custody or confinement and to persons violating probation or parole felons, the SSA issued proposed rules regarding nonpayment of benefits to fugitive felons.

10

See 70 FR 72411, 2005 WL 3271950 (Dec. 5, 2005). In these proposed rules, the SSA interpreted the term "fleeing to avoid prosecution" as follows:

> to mean that a person has an outstanding warrant for his or her arrest. It is the responsibility of federal, state, local, and foreign courts and law enforcement officials to issue warrants and ensure that they are issued in appropriate circumstances. <u>Therefore, we propose to determine that a person is a fugitive felon when an outstanding felony warrant for the person's arrest exists, even if that person is unaware that an outstanding warrant exists</u>.

Id. at 72413 (emphasis added).

Consistent with that interpretation, the SSA's internal procedural guidelines set forth in its Program Operations Manual System ("POMS"),[2] explained:

> The complexities of criminal law that dictate whether or not an individual meets the definition of fugitive felon or parole or probation violator are sometimes unclear and can vary from state to state. For this reason, SSA relies on the expertise of law enforcement agencies and courts for determinations about an individual's legal status. <u>As long as a United States warrant or court order is active, SSA considers an individual to be a "fugitive felon" for SSI eligibility determination purposes. This is true even if the law enforcement agency is unwilling to extradite</u>, although this unwillingness to extradite may be a factor in SSA's good cause determination.[3]

\* \* \*

---

[2] The Eighth Circuit has found that "the POMS are entitled to respect as publicly available operating instructions for processing Social Security claims." Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 951 (8th Cir. 2004) (internal quotation omitted). "Although POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir. 2003) (citations omitted).

[3] Because Reff's charged offense does not deal with a non-violent offense. Reff does not qualify for any of the good cause exceptions listed in 42 U.S.C. § 1382(e)(4)(B), or for any of the good cause exceptions provided for the POMS, including the exception for cases where the law enforcement agency that issued the warrant reports that it will not extradite the fugitive. See *Good Cause Provision*, POMS SI 00530.015.

11

> <u>Although the warrant may not specifically state that the individual is a fugitive, SSA still considers the individual to meet the ineligibility criteria of the fugitive felon provisions until the warrant is resolved</u>.

*Why Do We Need a Warrant or Court Order?*, POMS SI 00530.030 (emphasis added);[4] <u>see</u> also *For Which Months are Fugitives Ineligible?*, POMS SI 00530.010 ("NOTE: The warrant does not have to state that the individual is 'fleeing' for the suspension to apply.").

In summary, it is defendant's position that a claimant is "fleeing to avoid prosecution," for the purposes of 42 U.S.C. § 1382(e)(4)(A) and 20 C.F.R. § 416.1339, where an outstanding felony warrant for the claimant's arrest exists.  <u>See</u> Def.'s Mem. at pp. 11-14.  The fact that a claimant is unaware that an outstanding warrant exists, the arrest warrant does not state that the claimant is a fugitive, or the issuing law enforcement agency is unwilling to extradite, does not effect the Agency's determination regarding whether a claimant is "fleeing to avoid prosecution."  <u>Id.</u>  Defendant argued that the interpretation of its own regulations and governing statutes is reasonable and should be afforded significant deference.

This Court rejects the Commissioner's construction of "fleeing to avoid prosecution," and finds that substantial evidence in the record does not support a finding that Reff was fleeing to avoid prosecution.

First, while § 1382(e)(4)(A) does not define "fleeing to avoid prosecution," the plain language of the statute does not permit the Commissioner's construction of "fleeing to avoid prosecution" to be so broad as to include that a person is "fleeing'" merely because there is an outstanding warrant for his or her arrest.  In the criminal

---

[4]   A copy of the POMS can be found at https://secure.ssa.gov/apps10/poms.nsf.

12

justice context, a fugitive flees from a jurisdiction in order to avoid detection or prosecution. Black's Law Dictionary defines "flee from justice" as an "act or an instance of fleeing, esp. to evade arrest or prosecution." Black's Law Dictionary (8th ed. 2004). The Merriam-Webster Dictionary classifies "avoid" as meaning "to keep away from" or to "prevent the occurrence or effectiveness of" and also defines "flee" to mean "to run away from." See http://www.merriam-webster.com/dictionary.[5] It is impossible to run away from prosecution or to prevent something from happening (i.e., from being prosecuted) if an individual does not know they are being prosecuted. "The statute's use of the words 'to avoid prosecution' confirms that for 'flight' to result in a suspension of benefits, it must be undertaken with a specific intent, i.e., to avoid prosecution."[6] Oteze Fowlkes v. Adamec, 432 F.3d 90, 97 (2d Cir. 2005). Indeed, those courts that have examined this issue have concluded that the SSA's interpretation of "fleeing to avoid prosecution" is contrary to the plain meaning of the statute. See e.g., Caldwell v. Astrue, No. 3:07-CV-222, 2008 WL 2713714 at *4 (E.D. Tenn., July 10, 2008) (noting that § 1382(e)(4)(A) does not have a clear definition of the term "fleeing" and finding that the plain meaning the statute required intent to avoid prosecution); Hull v. Barnhart, 336 F. Supp.2d 1113, 1117 (D. Or. 2004) (finding that the plain meaning of the statute

---

[5] This Court notes that the Eighth Circuit has relied on dictionaries to discern the plain meaning of words in statutes. See, e.g., United States v. Idriss, 436 F.3d 946, 949 (8th Cir. 2006); Jones v. Vilsack, 272 F.3d 1030, 1036 (8th Cir. 2001); United States v. Hall, 801 F.2d 356, 359 (8th Cir. 1986).

[6] Defendant notes that intent of PRWORA, as exemplified by its legislative history, was to ensure that crime does not pay. See Def.'s Mem. at p. 7 (citing 141 Cong. Rec. H3618-19). However, the applicable SSA regulation, § 416.1339, provides that SSI benefits may be resumed when a claimant is found to be no longer fleeing to avoid prosecution. 20 C.F.R. § 416.1339(c). Under the regulation, a person who turns themselves in to authorities may be eligible for benefits. In other words, being charged with a crime is not the issue. Instead, the central issue with regards to eligibility is whether a claimant is actively avoiding prosecution.

undercuts the interpretation by the SSA); Garnes v. Barnhart, 352 F. Supp.2d 1059, 1065 (N.D. Cal. 2004) ("SSA's contention that there is, in effect, no intent requirement for an individual to be found to be "fleeing" is unsupportable."); Thomas v. Barnhart, No. 03-182-B-W, 2004 WL 1529280 at *4 (D. Me. June 24, 2004) (""Fleeing to avoid" something necessarily implies an intent to avoid that thing. I agree with the plaintiff that the commissioner's interpretation of the statute as set forth in POMS is unreasonable to the extent that it presumes that the statute applies merely from the existence of an arrest warrant."). Defendant cited no cases and this Court could find no cases to the contrary.

Second, to the extent that defendant argued that the Second Circuit decision in Fowlkes incorrectly decided that the ALJ had to make an individualized finding that a claimant left a state with the specific and conscious intent to avoid prosecution, this Court finds otherwise.[7] See Def.'s Mem. at pp. 12-13. In particular, defendant pointed

---

[7]    Defendant also implied that the decision in Fowlkes should be given less deference because the claimant in that case was informed that he was ineligible for benefits in 2000, well before the enactment of the SSPA, which supplemented the PWORA in 2005. See Def.'s Mem. at pp. 9, 12-13 n.5. However, the language added by the SSPA did not change the relevant language in § 1382(e)(4)(B) and 20 C.F.R. § 416.1339 setting forth whether a claimant is ineligible for benefits as person "fleeing to avoid prosecution."  Compare Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. 104-193 § 408, 110 Stat. 2105 (1996) with Social Security Protection Act of 2004, Pub.L. No. 108-203, § 203, 118 Stat. 493 (2004).  Further, defendant seemed to suggest that Fowlkes should be given less weight or ignored because it was decided "before the Agency clarified its rationale for deferring factual questions relating to outstanding warrants to the courts that issued them, and for appropriately using the existence of outstanding warrants as indicia for finding that a claimant is avoiding prosecution".  See Def. Mem. at p. 13.  This argument is disingenuous at best.  In Fowlkes, the Second Circuit noted that the Commissioner was relying on the following:

> The Commissioner argues that this interpretation of the regulation is contained in the Social Security Program Operations Manual Systems ("POMS"). The POMS state that an individual is ineligible to receive SSI benefits

to § 1382(e)(4)(B)(i), where the statute authorizes the Commissioner to find an individual eligible for benefits if the Commissioner determines that "a court of competent jurisdiction has found the person not guilty of the criminal offense, dismissed the charges relating to the criminal offense, vacated the warrant for arrest of the person for the criminal offense, or issued any similar exonerating order (or taken similar exonerating action). . . ." Id. at pp. 13-14 (quoting 42 U.S.C. § 1382(e)(4)(B)(i)). Under defendant's rationale, if the SSA has the statutory authority to restore eligibility after a warrant has been vacated, then that necessarily means that the SSA has the statutory authority to suspend benefits based solely on the existence of such a warrant. See Def.'s Mem. at p. 14. Defendant's argument misses the point. Section § 1382(e)(4)(A) states that a person is ineligible for benefits if they are a fleeing to avoid prosecution on a felony charge. In other words, to be ineligible, a claimant needs to be charged with a felony and be fleeing from prosecution for that charge. The language of § 1382(e)(4)(B)(i), on the other hand, focuses on the underlying felony criminal offense, including being found not guilty on the charge or where a court vacates the warrant for

---

> beginning any month "in which a warrant, a court order or decision, or an order or decision by an appropriate agency ... is issued which finds that the individual *is wanted in connection with a crime that is a felony*," and that "[t]he warrant does not have to state that the individual is 'fleeing' for the suspension to apply." POMS SI 00530.010 (emphasis added). Another written employee instruction, EM-98075, states that a warrant "need only specify that an individual is wanted in connection with a felony charge" for that individual to be determined to be a fleeing felon. Instruction EM-98075.

Fowlkes, 432 F.3d at 96 (emphasis in original). The Second Circuit not only had defendant's rationale before it, it is that interpretation that the court explicitly rejected. Id. at 97 ("The Commissioner's current interpretation is not a permissible construction of either the statute or the regulation because it contemplates suspension of benefits without any finding of "flight" by the agency, a court, or other tribunal. Therefore, it is not entitled to deference.").

15

arrest of the person for the criminal offense. However, this section makes no mention of fleeing. As such, this Court cannot find that because § 1382(e)(4)(B)(i) gives the Commissioner authority to reinstate eligibility after a warrant has been vacated, it leads to the conclusion that the Commissioner has the statutory authority to suspend benefits based solely on the existence of such a warrant.

Third, the interpretation proffered by defendant and as set forth in the POMS is contrary to the SSA's agency regulation at this issue in this case, 20 C.F.R. § 416.1339(b)(1)(i), quoted in full above, which states that a person is ineligible from the month in which a warrant for the individual's arrest is issued by a court on the basis of <u>an appropriate finding</u> that the individual is fleeing to avoid prosecution. A court should interpret a regulation so that, "if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001) (quoting <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001)) (citations omitted). Under the Commissioner's interpretation, the language requiring a court finding as to flight is rendered superfluous. <u>See</u> <u>Caldwell</u>, 2008 WL 2713714 at *4 ("The Commissioner argues that if a warrant is issued, the person is a fleeing felon under the statute and remains so until the warrant is resolved. This, however, is not what the regulation provides. The regulation requires a court finding that the person is fleeing. Accordingly, the Court need not defer to an agency interpretation of a provision or a word which is contrary to its ordinary meaning nor must deference be accorded to an interpretation of a provision which renders portions superfluous."); <u>Hull</u>, 336 F. Supp.2d at 1116-17 ("The Commissioner argues that if a warrant is issued, the person is a fleeing felon under the statute and remains so until the warrant is resolved. This is not what [20 C.F.R. § 416.1339(b)(1)(i)] provides. It requires a court finding that the person is fleeing.");

16

<u>Garnes</u>, 352 F. Supp.2d at 1117 (same). Given that defendant's interpretation of 42 U.S.C. § 1382(e)(4)(A) and 20 C.F.R. § 416.1339(b) is contrary to the plain meaning of "fleeing to avoid prosecution" and would render portions of 20 C.F.R. § 416.1339(b)(1)(i) superfluous, this Court gives the agency's interpretation no deference.

Fourth, in support of defendant's position that its administrative adjudication system is charged with determining whether or not to pay benefits, and it is not the appropriate forum for litigating the issue of intent to avoid prosecution, defendants relied on comments made by the SSA in connection with its proposed rules. <u>See</u> Defs.' Mem. at pp. 9-10 (citing to 70 FR 72411, 72413, 2005 WL 3271950 (December 5, 2005)). These comments state in part:

> [T]he legislative history makes clear that a person should be considered "fleeing" if it is reasonable to conclude that he or she <u>knew or should have known that criminal charges are pending</u> (148 Cong. Rec. S16181 (daily ed. Dec. 9, 2003). From this, we do not believe that Congress intended that we be the arbiters of these disputes concerning whether or not an individual is actually a fugitive; instead, if a person wishes to challenge a warrant he or she should deal with the appropriate law enforcement authority to resolve the matter. The position we take here will encourage persons to do that. Furthermore, interpreting the statute to require us to inquire into, and possibly adjudicate, the subjective intent of felons runs counter to one of Congress's, and our, overriding goals: to ensure the efficient administration of the largest benefits programs in the world, involving millions of applications and tens of millions of beneficiaries.

70 FR 72411, 72413, 2005 WL 3271950 (emphasis added).

These comments by the SSA regarding the legislative history of § 1382 cut against its interpretation that a person is fleeing from prosecution under the statute merely because there is an outstanding warrant for his arrest. The phrase "knew or should have known" implies that a claimant had some knowledge of the arrest warrant.

17

Yet defendant would have this Court find that a claimant "should have known" even if he had no knowledge of an outstanding warrant.

Fifth, this Court is not requiring the SSA to conduct its own "mini-trial" to determine whether a claimant had the requisite intent to flee in order to avoid prosecution. Instead, all the SSA is required to do is follow its own regulation, 20 C.F.R. § 416.1339(b)(1)(i), and determine whether a court has issued a <u>finding</u> that an individual has fled or was fleeing from justice.[8] In fact, the "regulation does not permit the *agency* to make a finding of flight; rather, it demands a court or other appropriate tribunal to have issued a warrant or order based on a finding of flight." <u>Fowlkes</u>, 432 F.3d at 97 (emphasis in original); <u>see</u> <u>also</u> <u>Hull</u>, 336 F. Supp.2d at 1117 ("there is nothing else in the record to indicate that the warrant was issued by a court on the basis of an appropriate finding that Hull fled to avoid prosecution. The lack of evidence on this point is dispositive of the issue before me."). Indeed, a federal agency, such as the SSA, is bound to follow its regulations. See <u>Carter v. Sullivan</u>, 909 F.2d 1201, 1202 (8th Cir. 1990) (per curium) ("an agency's failure to follow its own binding regulations is a reversible abuse of discretion.") (citing <u>City of Sioux City v. Western Area Power Admin.</u>, 793 F.2d 181, 182 (8th Cir. 1986); <u>Suciu v. Immigration & Naturalization Serv.</u>, 755 F.2d 127, 129 (8th Cir. 1985)); <u>see</u> <u>also</u> <u>United States v. Nixon</u>, 418 U.S. 683, 695-96 (1974) (concluding that a federal agency is bound to follow its own regulations).

---

[8] Likewise, while defendant argued that <u>Thomas v. Barnhart</u>, 540 U.S. 20 (2003), authorizes it to use a proxy, like the existence of an arrest warrant, to find intent to flee from prosecution (<u>see</u> Def.'s Mem. at pp. 16-17), the Court observes that the SSA has already in place a proxy via 20 C.F.R. § 416.1339(b)(1)(i), which permits it to deny benefits where there exists a warrant or order issued by a court or other authorized tribunal on the basis of a finding that an individual has fled or was fleeing from justice.

In this case, there is no warrant or order issued by a court or other authorized tribunal making a finding that Reff has fled or was fleeing from justice. To the contrary, the warrant for Reff's arrest makes no mention of him fleeing. Tr. 47. Further, the record establishes that Reff did nothing to conceal his whereabouts from law enforcement, and that once he learned of the warrant, he expended efforts to resolve it. Lacking any evidence of a court finding that Reff had fled or was fleeing from justice, or evidence that Reff had affirmatively engaged in conduct to conceal his whereabouts, the ALJ's decision to deny Reff benefits simply because a warrant for his arrest was outstanding cannot be upheld. See Caldwell, 2008 WL 2713714 at *4 (finding the evidence did not support the conclusion that plaintiff was fleeing to avoid prosecution as he did not leave California aware of the warrant, he did not attempt to conceal himself from authorities in any manner, authorities did not attempt to search for him, and plaintiff attempted to resolve the warrant with the help of the California authorities).

Finally, even if this Court were to ignore the fact there was no court finding that Reff had fled or was fleeing from justice, and place significance on the fact that Reff had discovered the outstanding warrant for his arrest and was aware of it at the time he applied for benefits, this Court would still not reach a different result. The duty not to flee does not mean that a claimant has the "affirmative duty to return, especially when one is unable to do so." Blakely v. Com'r of Social Security, 330 F. Supp.2d 910, 914 (W.D. Mich. 2004). This includes where an individual is financially unable to travel to the charging jurisdiction (id.), and where he is unable to travel due to his disability. Caldwell, 2008 WL 2713714 at *5. Here, the undisputed record before the ALJ was that Reff did not have the financial ability to travel to Georgia to resolve the outstanding warrant, Georgia has refused to extradite him, and traveling could negatively impact his

health. Tr. 119, 123-24, 126-127. Based on this record, substantial evidence supports a finding that Reff was not fleeing with intent to avoid prosecution.

For all of these reasons, this Court finds that the decision by the ALJ to deny plaintiff eligibility is not free of legal error and is not supported by substantial evidence on the record as a whole.

## RECOMMENDATION

THEREFORE, IT IS RECOMMENDED THAT:

1.   Plaintiff's Motion for Summary Judgment [Docket No. 11] be **GRANTED**; and

2.   Defendant's Motion for Summary Judgment [Docket No. 18] be **DENIED**.

3.   Plaintiff's case be **REMANDED** to the Social Security Administration for a determination as to whether plaintiff is entitled to Supplemental Social Security Income based on his alleged disability.

Dated:     August 12, 2008

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 29, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.